**UNIT PETROLEUM COMPANY,**
Appellant,

v.

**OKLAHOMA WATER RESOURCES
BOARD, Appellee,**

and

**City of Enid, A municipal corporation, and
The Oklahoma Farm Bureau, a nonprofit general farm organization, Intervenor
Appellees.**

No. 81030.

Supreme Court of Oklahoma.

July 5, 1995.

---

Mark Schell, Graydon D. Luthey, Jr., John A. Menchaca, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, for appellant.

Dean A. Couch, C. Lou Klaver, Oklahoma City, for appellee, Oklahoma Water Resources Bd.

R. Thomas Lay, Kerr, Irvine, Rhodes & Ables, for intervenor appellee, The City of Enid.

WATT, Justice.

## FACTS

Unit Petroleum Company owns minerals, which it wants to develop for oil and gas purposes. Unit sought a permit from the

Oklahoma Water Resources Board to use water that underlies the property in which Unit owns the minerals because Unit wanted to explore for oil and gas. The Board denied Unit's application on the ground that 82 O.S. 1991 § 1020.11.D prohibited it from doing so unless Unit first obtained a water lease from the surface owner.[1]

Unit filed an action in the district court seeking declaratory relief from the Board's ruling. The trial court held against Unit, concluding that the Board's interpretation of the statute was correct, except that it could be applied only to mineral leases executed after the effective date of the statute, May 28, 1985. The trial court's exception was not extended to mineral owners whose minerals were not leased. The Court of Appeals, Division 1, affirmed.

## ISSUE

The sole issue here is whether the trial court erred in excluding from the application of § 1020.11.D only mineral leases executed before May 28, 1985, rather than also excluding owners of minerals severed from the surface estate before May 28, 1985. The record does not make clear when Unit acquired its interest in the minerals at issue here.

## DISCUSSION

*Applying § 1020.11.D Prospectively to Mineral Lessees, But Not to Owners of Severed Minerals Was Error*

■ *Ricks Exploration v. Oklahoma Water Resources Board,* 695 P.2d 498, 503 (Okla.1984), was a case in which a mineral lessee appealed the Board's denial of the same sort of permit sought here by Unit. In *Ricks* we held that "a *mineral owner's* claim to groundwater use is a 'vested right' created by common law.... A vested interest will

not be deemed abrogated or impaired except by explicit legislative extinguishment effective prospectively." [Emphasis added, footnotes omitted.] We also said in *Ricks* that "if the legislature had chosen to alter the mineral owner's claim to groundwater, it would have made that right subject to the sole discretion of the surface owner." *Id.* at 504. Under *Ricks* the legislature may make a mineral owner's right to water subject to the sole discretion of the surface owner, *but only if the operation of the statute is prospective.* Here, the trial court's ruling applied the statute prospectively to mineral lessees, but *not* to mineral owners. This was error.

■ If the owner of severed mineral interests gives a mineral lease to an oil company, the oil company's rights under its lease can be no greater than those its lessor owned. Thus, there could be no basis for applying § 1020.11.D prospectively as to lessees but not as to owners of severed minerals. The distinction between mineral owners and mineral lessees drawn by the trial court was, therefore, discriminatory and invidious. The equal protection clause of the constitution requires that distinctions between classes be based on reason. *McClendon v. Slater,* 554 P.2d 774, 777 (Okla.1976), *certiorari denied,* 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977). We reverse the trial court's judgment because § 1020.11.D must be applied equally to both owners of severed minerals and their lessees.

*Section 1020.11.D Must Be Interpreted as Applying Prospectively Only In Order to Satisfy Constitutional Requirements*

■ We have an obligation to interpret statutes to make their application constitutional rather than unconstitutional. *Simpson v. Dixon,* 853 P.2d 176 (Okla.1993). To apply § 1020.11.D retroactively here would be to apply it unconstitutionally.

---

1. 82 O.S.1991 § 1020.11.D provides in material part:
 No permits shall be issued to an applicant who is not the surface owner of the land on which the well is to be located, or does not hold a valid lease from such owner permitting withdrawal of water from such basin or subbasin.

Unit contends that § 1020.11.D should not be applied to mineral owners regardless of when the minerals were severed from the surface estate. The Board concedes that § 1020.11.D must be interpreted as having prospective application as to owners of vested interests. The Board contends, however, that owners of severed minerals and their lessees are not vested owners of the right to use water unless they had actually used water for oil and gas purposes before the effective date of the amendment to § 1020.11.D. According to the Board, giving the surface owner sole discretion as to the use of groundwater is an appropriate use of the police power, although the mineral estate has been severed from the surface. Both Unit's and the Board's contentions are without merit as to owners of mineral interests that were severed from the surface before the effective date of the amendment to the act, May 28, 1985.

The Board relies on *Davis Oil Company v. Cloud,* 766 P.2d 1347 (Okla.1986), in which we held the Surface Damages Act, 52 O.S.1991 §§ 318.2, et seq., to be an appropriate application of the police power. The issues in *Davis* were very different from those we face today, however. The Surface Damages Act merely modified a common law defense that oil and gas operators previously had available to them in suits by surface owners for surface damages. We expressly rejected the defendant's claim that this common law defense was a vested property right. *Id.* at 1349–50; *Houck v. Hold Oil Corp.,* 867 P.2d 451, 456 (Okla.1993). We expressly held in *Ricks* that a severed mineral interest is a "vested right," which may not be taken away except by legislation that is "effective prospectively." 695 P.2d at 503. Thus, owners of severed mineral rights acquired before May 28, 1985 have *vested* water rights with respect to oil and gas operations.

Our analysis requires us to construe § 1020.11.D as having prospective application with respect to all mineral interests severed from the surface estate prior to the effective date of the statute's amendment, May 28, 1985. Failing to do so would place in the hands of surface owners the unfettered right to prevent either the owners of severed minerals who owned minerals on the effective date of the amendment, or their lessees, from using water in oil and gas operations other than on the surface owners' terms. The sole value of severed mineral interests is the right to explore for, and if successful, produce minerals. Exploration for and the production of minerals requires water. Nevertheless, absent the surface owner's agreement, § 1020.11.D would prohibit the Board from granting the owners of severed minerals a water use permit for oil and gas development under any circumstances. Such a result would unconstitutionally delegate legislative power.

In *American Home Products Corp. v. Homsey,* 361 P.2d 297 (Okla.1961), we declared unconstitutional an act that prohibited a retailer from selling a manufacturer's product for an amount less than the amount for which other retailers had agreed to sell the product, although the defendant retailer had made no such agreement with the manufacturer. We observed that under the act "no public officer or official board has any say or participation in fixing the price." *Id.* at 299. Consequently, we held that the act was an "unlawful delegation of legislative power and is unconstitutional and void." *Id.* at 301. The same situation would prevail under § 1020.11.D were we to apply it to owners of minerals severed from the surface estate before the effective date of the statute. To do so would deprive the Board of all discretion until and unless the surface owner gave a water lease to the mineral owner or the mineral owner's lessee. This we must not do.

 Unit appears to argue that those who acquire mineral interests after May 28, 1985 are deprived of vested interests. If this is Unit's claim, we must reject it. One who acquires no minerals until after the amendment becomes effective has no vested interest in the right to use water for oil and gas purposes. Those who may acquire previously unsevered mineral interests on or after

May 28, 1985 are not prejudiced. Contracting parties and testators are "presumed to know the law," and must govern their dealings accordingly. *Matter of Estate of Flowers*, 848 P.2d 1146, 1151 (Okla.1993); *Nottingham v. City of Yukon*, 766 P.2d 973, 976 (Okla.1988). Thus, persons who wish to acquire previously unsevered minerals are presumed to know that they must acquire from the owner the right to use water in connection with exploration for and production of minerals.

As we construe the amendment to § 1020.11.D, the legislature's decision to change the water rights rules with respect to minerals acquired after the effective date of the act was reasonable. We hold that prospective mineral buyers may bargain for and acquire the water rights they need when they buy previously unsevered minerals from the surface owners. If the buyers do not do so they have only themselves to blame.

## CONCLUSION

The trial court is instructed to enter a declaratory judgment declaring that the Board shall apply § 1020.11.D prospectively only. Neither owners of mineral interests severed from the surface estate before § 1020.11.D was amended, on May 28, 1985, nor their lessees, need obtain a water lease from the surface owner as a condition precedent to obtaining a water use permit from the Board.

CERTIORARI PREVIOUSLY GRANTED, COURT OF APPEALS OPINION VACATED, TRIAL COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.

HODGES, LAVENDER, OPALA and SUMMERS, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J. and SIMMS and HARGRAVE, JJ., dissent.

SUMMERS, Justice, concurring.

I concur with the majority's opinion because the Legislature may not *retroactively* take away a vested property right from one class of individuals and confer it upon another. *Ricks Exploration v. Oklahoma Water Resources Board*, 695 P.2d 498 (Okla.1984); *Davis Oil Co. v. Cloud*, 766 P.2d 1347, 1353–1357 (Okla.1986), (Summers, J., dissenting, joined by Opala, V.C.J., Hodges, Simms, JJ.). The Legislature may exercise a regulatory or police power and alter or diminish a person's property right. *Anderson–Prichard Oil Corp. v. Corporation Commission*, 205 Okla. 672, 241 P.2d 363 (1951), appeal dismissed, 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698 (1952). But here, according to the Board's construction, the Legislature takes away a water right from a mineral owner, gives it to a surface owner, and then allows the surface owner to sell it back to the mineral owner. The exploration activity before and after the Act is identical, but after the Act the mineral owner must make a payment for the use of the water. This is not a valid exercise of police power for the purpose of altering existing property rights. *Davis Oil Co. v. Cloud*, 766 P.2d at 1353–1357, (Summers, J., dissenting).

The statute makes no distinction between mineral lessees and mineral owners.

> ... [N]o permits shall be issued to an applicant who is not the surface owner of the land on which the well is to be located, or does not hold a valid lease from such owner permitting withdrawal of water from such basin or subbasin.

82 O.S.1991 § 1020.11(D), material omitted.

By this language the Legislature divided the class of all property owners into three categories: (1) surface owners, (2) owners of lease to withdraw water, and (3) all others. Mineral owners and mineral lessees fall into the last category. The trial court distinction between mineral lessees and mineral owners is not found in the statute nor in the opinions of this Court. Thus, I concur with today's opinion.